STATE v. J. B. GREEN.

(Decided March 27, 1900.)

*East Durham—License Tax to Sell Fresh Meat—Cities and Towns—Act 1899, Chapter 11, Section 51.*

1. Cities and towns referred to in statutory enactments imply incorporated communities with defined limits, unless otherwise indicated. Constitution, Art. VIII, sec. 4.

2. East Durham is a suburb of the city of Durham, outside of the city limits and unincorporated. It is not embraced in the provisions of the Act of 1899, chap. 11, sec. 51, which imposes an annual license tax upon the business of buying and selling fresh meat in cities and towns, graded according to population.

3. When there is any ambiguity, the construction must be in favor of the public, because it is a general rule, that when the public are to be charged with a burden, the intention of the Legislature to impose that burden must be explicitly and distinctly shown.

INDICTMENT for selling fresh meat in East Durham without having paid license for the privilege, required by Act 1899, chap. 11, sec. 51, for such sales in cities and towns, tried before *Moore, J.,* at January Term, 1900, of DURHAM Superior Court.

There was a special verdict to the effect that the defendant had made such sales in East Durham without license; but that East Durham was outside of the city of Durham, unincorporated and without town government and defined limits.

The Court having instructed the jury that the defendant was guilty, they so found, and judgment was rendered against him for a penny and the costs, and he appealed.

*Mr. Attorney-General,* for the State.
*Messrs. Boone, Bryant & Biggs,* for the defendant.

STATE *v.* GREEN.

CLARK, J. Section 51, chap. 11, Laws 1899, imposes an annual license tax upon the business of "buying and selling fresh meat from offices, stores, stalls or vehicles," as follows: "In cities or towns of 12,000 inhabitants or over, $7.50; in cities and towns from 8,000 to 12,000 inhabitants, $5; in cities or towns under 8,000 inhabitants, $3." The defendant is indicted for carrying on such business in the town of East Durham without having paid the license tax above required.

The special verdict finds that the defendant carried on such business, without having paid any license tax, at a small stand near the Durham Cotton Mills, situate about one mile outside the corporate limits of Durham, in a locality known as East Durham, which is a postoffice and railroad station, but which is not within the limits of any incorporated town; that within a radius of one mile from such stand the number of inhabitants is between 2,000 and 4,000.

The sole question raised is whether the section imposing this license tax applies to towns not incorporated. Colloquially speaking, towns may be any aggregation of houses, and of any size. This very indefiniteness indicates that in authorizing this tax the Legislature did not intend to leave open a question which could only be settled in each case for itself, whether a given aggregation of houses was a "town"—whether 20 houses, or 50 houses, or 100 houses, or 200 people, or 500 or 1,000 people would make a town, and in what radius they must be compressed. Such loose expressions are common in ordinary conversation, but are not admissible in a statute, imposing a tax and making a misdemeanor. "When there is any ambiguity, the construction must be in favor of the public because it is a general rule that when the public are to be charged with a burden the intention of the Legislature to impose that burden must be explicitly and distinctly shown." Dwarris on Statutes, 742, 749; Cooley on Tax, 267.

It is reasonable to suppose that in this case the law-making power intended a "town" which had been declared by law to be one by an act of incorporation. That makes a definite, well-defined line, which no one can mistake, and which can never leave it in doubt whether or not a person is liable to a license tax prescribed for carrying on any designated business "in a town."

In New England and some other States a "town" means always a township. In England the term "city" does not depend upon the number of its inhabitants, but upon its being the seat of a Bishop; for instance Chester, with a few thousand inhabitants, has been for centuries a city, while the neighboring Liverpool, with many times the population, was only the "town of Liverpool" till comparatively recently, when it became a "city" by being given a Bishop. Statutes passed in England or New England containing the word "town" would therefore have to be construed with reference to this different legal meaning of the word. So in this State, the word "town" or "city" in a statute must depend upon its legal meaning of being so declared by a statute incorporating it as a town, or city, without reference to the number of its inhabitants or the density of population. The Constitution, Art. VIII, sec. 4, authorizes the General Assembly to "provide for the organization of cities, towns and incorporated villages" and from this it would seem that only those that are thus "organized" should, in purview of law, come under that head, unless an act should specially provide for the inclusion of "unincorporated towns," in which case doubtless the act would prescribe what number of inhabitants, and in what specified space, should constitute such a town, so as to create a standard which is now utterly lacking, unless we draw the line at "incorporated towns and cities." Sec. 3787, chap. 62, of The Code, which provides that "every incorporated town"

shall elect officers, etc., means merely that "upon its incorporation" every town shall elect its officers.    It is not intended to declare that unincorporated places are "towns," for if it were, the number of inhabitants would be prescribed which would make a town without incorporation.    Indeed, in all the succeeding sections of that chapter wherever the word "town" is used it is plain beyond peradventure that an "incorporated" town is meant.    Of these are now 218 in this State.    It must have the same meaning in this act, unless there had been words showing a different intent.

Upon the special verdict the defendant should have been adjudged "not guilty."

Reversed.