## STATE v. CARTER.

(Filed December 10, 1901.)

1. LICENSES —*Taxation* —*Trades—Professions—Constitution, Art. V, Sec. 3, Acts 1899, Ch. 11, Sec. 51.*

   A statute imposing a license tax on the business of buying and selling fresh meat, in cities and towns, the tax being graded according to population, is unconstitutional.

2 LICENSES—*Taxation—Trades—Professions.*

   A statute imposing a tax on the business of buying and selling fresh meat applies to persons buying and butchering cattle and selling the meat.

INDICTMENT against C. W. Carter and J. E. Jones, heard by Judge O. H. Allen and a jury, at Spring Term, 1901, of the Superior Court of HERTFORD County. From a verdict of guilty and judgment thereon, the defendants appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*Winborne & Lawrence,* for the defendants.

CLARK, J.    That the Legislature in enacting police regulations may make different provisions for different localities according to the supposed wishes or needs of the inhabitants thereof, has been uniformly held in this State—many of the decisions being collected in *State v. Sharp,* 125 N. C., at page 632, 74 Am. St. Rep., 663. And this is the recognized rule. Cooley Const. Lim. (6th Ed.), 480. Frequently a license tax is exacted for the purpose of regulation, and then the same principle applies. 1 Desty Tax, 305; Burroughs Taxation, sec. 77.

Here, however, the tax is not of that nature, but for revenue. The statute (section 51, Chapter 11, Laws 1899) imposes an annual license tax upon the business of "buying and selling fresh meat from offices, stores, stalls or vehicles,"

as follows: "In cities or towns of 12,000 inhabitants or over, $7.50; in cities and towns from 8,000 to 12,000 inhabitants, $5.00; in cities or towns under 8,000 inhabitants, $3.00." The defendants were indicted for carrying on said business in a town of less than 8,000 inhabitants, and, being found guilty and sentenced to a fine of $5.00 each, appealed upon the ground of the unconstitutionality of the act in that it was not uniform, and especially because it imposed no license tax if the business was carried on outside a city or town.

In *Gatlin v. Tarboro,* 78 N. C.,119, it was pointed out that the Constitutional requirement (Art. V., sec. 3) that taxation be uniform and *ad valorem* applied in its terms only to the tax upon property, for the section adds, "and may also tax trades," etc., without any requirement of uniformity as to the latter. But that opinion goes on to say that conceding that a tax on trades, occupations, etc., should be uniform, it is uniform when it is "equal upon all persons in the same class," as in that case a license tax on traders regulated by the amount of sales. So a license tax may be graduated, or it may be laid on some businesses and not on others. *State v. Stevenson,* 109 N. C., at page 733; *Insurance Co. v. New York,* 134 U. S., 594. Here, the tax laying $7.50 on the business when carried on in towns of over 12,000 inhabitants; $5.00 when carried on in towns having between 8,000 and 12,000, and $3.00 in towns under 8,000, is a classification made roughly with reference to the greater opportunity for profit, according to the number of customers accessible. A license tax on this business, which would be moderate in a large town, would prohibit the business in a small town or in the country. The classification is in the legislative discretion. Being uniform upon all those in each class, it is open to no objection except such as may be urged to the Legislature itself to secure a change or repeal of the law. In *State v. Moore,* 113 N. C.; 697, the tax on a certain business was held invalid because it

was restricted to that business in certain counties, and it was held that, while such discrimination was within the legislative power as to the exercise of the police power, it was otherwise in the matter of taxation.

In the present case, there is no restriction based on locality, but a classification, according to the opportunity for patronage, with uniformity of taxation as to every individual in each class.

Indeed, this identical statute was, impliedly at least, sustained in *State v. Green,* 126 N. C., 1032, in which it was held that one carrying on the business in a town, not incorporated, was not liable to the tax imposed by this act. If the act had been unconstitutional, the Court should *ex mero motu* have quashed the proceedings.

The validity of the statute is also recognized in *State v. Spaugh,* at this term, in which Douglas, J., appropriately quotes from *Rochester v. Pettinger,* 17 Wend., 265, the following, with approval: "The plain object of the ordinance was, while it protected licensed butchers, to allow farmers to come in and sell the produce of their farms."

But the further point is raised in this case that to buy cattle, butcher them and sell the meat at the defendant's place of business does not subject them to the tax exacted upon the business of "buying and selling fresh meat from offices and stores," etc. We must, however, consider the words in their usual acceptation. It does not mean that the party must necessarily buy and sell the meat when in the same state or condition. It means simply a "dealer" in fresh meat, *i. e.,* one who buys and sells. It is intended to tax the *business* of buying fresh meat and the business of selling fresh meat, either or both, if prosecuted for gain as a vocation. The maxim that criminal statutes shall be strictly construed has no application, for this is not a criminal statute at all. It is a provision (section 51) in the Revenue Law, Chapter

11, Laws 1889, laying a tax upon the business of buying and selling, dealing in, fresh meat. Another section (71) provides that "every person who shall practice any trade," etc., taxed by the laws of this State, without having paid the tax, shall be deemed guilty of a misdemeanor. The strictest construction of that statute would make it applicable to the defendants, if by a fair construction this section covers their business, for they have not paid the tax. The charge of the Court excepted to was as follows: "If the defendants, not being farmers, were engaged in buying cattle, killing them and selling the meat at their store, or under the shed in front of their store, after their license had expired, they would be guilty of buying and selling fresh meats in the meaning of the statute." That is the very business intended to be taxed, as is shown by the clause exempting farmers who kill their own product and sell it, without a regular place of business. Doubtless, by reason of the very strict construction placed by the Court on the word "trader," in *State v. Chadbourn,* 80 N. C., 479, and by *State v. Yearby,* 82 N. C., 561, on the word "dealer," both of those words are omitted in the present statute, which, in lieu of those words, uses simply "one engaged in the business of buying and selling," etc.

It is true that the meat was living when bought and dead when sold, but the business intended to be taxed is clearly indicated.

In holding the defendants liable to the tax, we find

No Error.